# In the United States Court of Federal Claims

No. 01-225C
(Filed: September 30, 2003)

* * * * * * * * * * * * * * * * * * * * * *

LAMB ENGINEERING &
CONSTRUCTION COMPANY,

*Plaintiff*,

v.

THE UNITED STATES,

*Defendant*.

* * * * * * * * * * * * * * * * * * * * * *

Contracts; False Claims Act; Termination for Default; Summary Judgment.

*Robert G. Watt, Esq.*, McLean, Virginia, for plaintiff Lamb Engineering & Construction Co. With him on briefs was *Keith Phillips, Esq.*, of counsel.

*Lauren S. Moore*, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, for the United States. With her on briefs were *Robert D. McCallum, Jr.*, Assistant Attorney General, *David M. Cohen*, Director, *Donald E. Kinner*, Assistant Director, *John Kral*, Attorney, Department of Energy, of counsel.

OPINION

BRUGGINK, *Judge*.

This is an action brought pursuant to the Contracts Dispute Act of 1978, 41 U.S.C. §§ 601-611("CDA"). Plaintiff, Lamb Engineering & Construction Company ("Lamb"), sought to have its default termination converted to a termination for convenience. Defendant counterclaimed under the False Claims Act, 31 U.S.C. § 3729 (1994) ("FCA"), seeking civil penalties and treble damages. We earlier granted in part defendant's motion for summary judgment, sustaining plaintiff's default termination based on false statements made in connection with contract

progress billings. We denied without prejudice, however, defendant's motion for summary judgment with respect to its FCA counterclaim for insufficient proof as to the claim for treble damages.

Defendant re-filed a motion for summary judgment on October 3, 2002, seeking judgment as to damages pursuant to the FCA. The motion was once again denied without prejudice for insufficient proof of payment to subcontractors. Now pending is defendant's amended motion for summary judgment on its FCA counterclaim. Defendant alleges that it is entitled to recover up to $10,000 in civil penalties for each of four false claims and $258,900.24 in treble damages, based on asserted losses of $86,300.08. Oral argument is deemed unnecessary. For the reasons set out below, defendant's motion for summary judgment is granted in part, and, once again, denied in part.

PROCEDURAL HISTORY

The Department of Energy, Western Area Power Administration ("WAPA") and Lamb entered into Contract No. DE-AC65-99WG50567 ("contract"), a $3,467,552.60 fixed-price construction contract, on August 13, 1999.[1/] WAPA terminated the contract for default on April 17, 2000. Lamb filed suit on April 13, 2001, seeking to convert its default termination to one for convenience. Background facts from this litigation can be found in our earlier opinion and order. *Lamb v. United States*, No. 01-225C, slip op. (Fed. Cl. Aug. 26, 2002) ("*Lamb I*"). Familiarity with them is presumed.

BACKGROUND

In the course of performing the contract, Lamb submitted five progress billings to WAPA, the last four of which were supported by attached invoices from subcontractors and suppliers. Lamb certified its payment requests for Progress Billings Nos. 2-5 in accordance with the Prompt Payment Act ("PPA"), 31 U.S.C. § 3903(b)(1), as implemented by Federal Acquisition Regulation ("FAR") 52.232-5. We found earlier that WAPA was justified in terminating for default because Lamb knowingly made false statements in connection with Progress Billings Nos. 2-4. *Lamb I*, at 11.

---

[1/] Contract No. DE-AC65-99WG50567 called for construction of an electrical substation in Kingman, Arizona.

What we found previously made out the elements for an assessment of civil penalties as to Progress Billings Nos. 2-4, although we did not actually assess them ($5,000 minimum per violation). We declined to make a finding as to Progress Billing No. 5. Pending now is the defendant's third attempt to obtain judgment on its claim for treble damages, as well as its reasserted claim for civil penalties for false statements in connection with Progress Billing No. 5.

With respect to Progress Billing No. 5, defendant relies on the prior record, which establishes the following. On May 2, 2000, Lamb submitted Progress Billing No. 5 requesting $1,121,073.03 in payments, which included the identical certification previously attached to Progress Billings Nos. 2-4. Lamb certified that all subcontractors had been paid from previous progress payments and that Lamb was not withholding any funds from its suppliers. It is uncontested that at the time of the certification for Progress Billing No. 5, Lamb had not in fact paid all its subcontractors in full from the funds dispersed as Progress Payments Nos. 3 and 4.

Defendant's claim for treble damages depends on proof of actual loss prompted by the false statements. Here, defendant contends that, because Lamb did not pay all its suppliers' invoices from funds dispersed with Progress Payments Nos. 2-4, WAPA was forced to incur a total of $86,300.08 in additional costs in closing out the work. Defendant relies on the previous documentary record, which includes the declarations of contracting officers Roger L. Moody and John P. Rynerson. It also now offers credit card statements and the affidavit and employment records of Lary A. Martin, a contract specialist.

Mr. Martin, as contract specialist for WAPA on Lamb's contract, was responsible for payments to subcontractors, vendors, and suppliers. He asserted in his affidavit that, after termination for default, he made numerous such payments. The court previously denied defendant's second motion for summary judgment on this issue because it was not clear from the record (and plaintiff declined to stipulate) that the photocopies of checks and credit card statements were authentic, and that checks paid by "Lary Martin" were paid on behalf of WAPA.

Mr. Martin's latest affidavit attempts to fill in these gaps. He affirms that the checks and credit card statements are authentic and represent payments made to subcontractors and suppliers on behalf of WAPA. Based on this latest information, defendant contends that WAPA paid J.D. Steel for invoice No. 737103, attached to Progress Billing No. 3. With respect to Progress Billing No. 4, the defendant contends that WAPA also paid Beacon Metals ("Beacon") for invoice No. 0007187-IN; CIE Inc. ("CIE") for invoices Nos. 13800, 13803 & 13805;

Conesco Inc. ("Conesco") for invoice Nos. 001466 & 024436; Crescent Electric Supply ("Crescent") for invoices Nos. 138-191335-00 & 138-191335-01; Cummins Southwest Inc. ("Cummins") for purchase order No. 524-31373; Mohave Truss & Mfg. ("Mohave") for purchase order No. 31610; Roxtec Inc. ("Roxtec") for invoice No. 0007562-IN; and Riter Engineering Inc. ("Riter") for invoice No. 12000-149. With the exception of invoice No. 024436 from Conesco for $119.11, it is uncontested that none of the above-listed invoices and purchase orders were ever paid by Lamb.

Defendant claims that these payments to Lamb's subcontractors and suppliers totaled $86,300.08, and were made to satisfy claims on the proceeds of Progress Payment Nos. 3 and 4. Defendant contends, and plaintiff does not deny, that following the default termination, WAPA made payments to suppliers for invoices originally submitted along with Progress Billings Nos. 3 and 4. It is not disputed that WAPA paid the following suppliers and subcontractors for invoices totaling $20,292.76: J.D. Steel ($1991.04 for invoice No. 737103); Beacon ($258.45 for invoice No. 0007187-IN); CIE ($12,456.07 for invoice Nos. 13800,13803, and 13805); Crescent ($187.33 for invoices Nos. 138-191335-00, and 138-191335-01); Mohave ($1050.00 for purchase order No. 31610); and Roxtec Inc. ($4,349.87 for invoice No. 0007562-IN).[2/]

WAPA also asserts that it made additional payments totaling $66,007.32 to three remaining vendors: Riter, Cummins, and Conesco. Lamb contends issues of fact remain as to payments to these three vendors, which cannot be resolved on a motion for summary judgment. The undisputed facts concerning payments to the three vendors are set out below. The disputed facts are addressed in the discussion section.

---

[2/]Only invoices whose payment defendant has advanced as the basis for its claim of double payment are listed. WAPA's checks, drafted in payment of the listed invoices, in most cases also included funds to pay invoices that were not submitted with Progress Billings Nos. 3 and 4, and are not the basis of defendant's claim.

*Riter Engineering Company*

Lamb attached Riter's invoice No. 12000-149 for $8,725.00 to Progress Billing No. 4. Lamb does not dispute that it did not pay Riter for this invoice. In his affidavit, Lary Martin lists this invoice as one that WAPA paid. Lamb disputes this, pointing out that there is no direct evidence of payment.

*Cummins Southwest Inc.*

Lamb attached Cummin's purchase order No. 524-31373 for $56,386.00 to Progress Billing No. 4. Lamb does not dispute that it did not pay Cummins. In his affidavit, Lary Martin explains that WAPA paid Cummins this amount on August 1, 2000, using Check No. 00224 as reflected in a photocopy of the check and a credit card statement.[3/] Plaintiff concedes that WAPA paid Cummins $56,386.00, but refuses to concede that the invoice submitted by Lamb with Progress Billing No. 4 and the invoice WAPA paid are the same.

*Conesco Inc.*

Lamb attached Conesco invoice No. 001466 for $777.21 and invoice No. 024436 for $119.11 to Progress Billing No. 4. Lamb does not dispute that it did not pay invoice No. 001466. The evidence establishes that on July 27, 2000, WAPA paid Conesco $1431.53 using Check No. 00213, $896.32 of which went to pay invoices No. 001466 and No. 024436. Lamb claims WAPA paid invoice No. 024436 in error, as evidenced by the handwriting on the face of the invoice stating "Paid By Lamb." Lamb claims that invoice No. 024436 for $119.11 was paid C.O.D. Lamb provides no further documentary evidence to bolster its assertion that invoice No. 024436 was actually paid by Lamb. With respect to Conesco's invoice No. 001466 for $777.21, Lamb alleges the invoice was not properly payable under the terms of the contract. It contends that it erroneously submitted this invoice to WAPA.

---

[3/] In his affidavit, Mr. Martin asserts that one of the methods used by WAPA to make payments is by writing a check on its Bank of America credit card account. After the supplier deposits the check, the amount appears as a debit on WAPA's credit card statement.

## DISCUSSION

A. Violation of the False Claims Act

The defendant has presented two issues in its latest motion. The first is whether the defendant has established a violation of the FCA and is therefore entitled to recover civil penalties under the FCA. The second issue is whether the defendant has met its burden of establishing actual damages in order to recover treble damages under the FCA.

As a threshold matter, the court must decide if there is a violation of the FCA. The FCA provides that any person who:

> [K]nowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government . . . is liable for civil penalties of not less than $5,000 and not more than $10,000, plus three times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a)(2).

Lamb certified on four occasions that "[p]ayments to subcontractors . . . have been made . . . and timely payments will be made." In *Lamb I,* we found that certifications in Progress Billings 2, 3, and 4 were false.

> [T]he falsity of [Lamb's] certifications is apparent from its defenses. [Lamb] does not contend that it in fact paid all its suppliers and subcontractors. Instead, it confesses the fact and attempts to justify non-payment on the basis of disputes or retention of withholdings, both of which were undisclosed at the time.

*Lamb I,* at 11.

Lamb contends that because *Lamb I* made no findings concerning Progress Billing No. 5 there "should be no penalty." In *Lamb I,* we did not have to reach the issue of Progress Billing No. 5; however, in order to decide the issues then properly before the court. We therefore deferred consideration.

It now appears from the undisputed evidence that at the time it certified Progress Billing No. 5, in which it requested over $1.1 million, Lamb still owed

J.D. Steel $1,991.04 on invoice No. 737103 attached to Progress Billing No. 3, and that twelve vendors were also due $243,989.92 in payments on invoices Lamb attached to Progress Billing No. 4. Although WAPA did not pay Progress Billing No. 5, the representation in the certification that subcontractors had been paid from previous payments was plainly incorrect.

For purposes of the FCA, a contractor is deemed to have known that a claim it submitted was false if it had (1) actual knowledge of the falsity of the claim; if it (2) acted in deliberate ignorance of the truth or falsity of the claim; or (3) acted in reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b). No proof of specific intent to defraud is required. We held in *Lamb I* that a party:

> filing a claim before the contracting officer and this court has a duty to examine its records to determine what amounts the government already has paid or whether payments are actually owed to subcontractors or vendors. . . [A] failure to make a minimal examination of records constitutes deliberate ignorance or reckless disregard, and a contractor that deliberately ignored false information submitted as part of a claim is liable under the False Claims Act.

*Lamb I*, at 9 ( relying on *UMC Elec. Co. v. United States*, 43 Fed. Cl. 776, 794 (1999) (citation omitted)). Moreover, as the court in *UMC Electronics* pointed out:

> Congress specifically rejected requiring a specific intent to defraud under the False Claims Act. *See* 31 U.S.C. §3729(b). Instead, it adopted a knowing standard, defined as actual knowledge of the falsity, acting in deliberate ignorance of the truth or falsity, or acting in reckless disregard of the truth or falsity. *Id.* The standard was designed to address the problem of the "ostrich-like" refusal to learn of information which an individual, in the exercise of prudent judgment, had reason to know. *See* S. Rep. No. 99-345, at 21 (1986), [*reprinted in*] 1986 U.S.C.C.A.N. 5266, 5286. Thus, the statute covers not just those who set out to defraud the government, but also those who ignore obvious warning signs.

*UMC Elec. Co.*, 43 Fed. Cl. at 793.

Lamb argues that it intended to pay all its subcontractors when it submitted its certifications and thus scienter is not established. The same argument was

made in *Lamb I*, where we found that this assertion is completely inconsistent with the facts presented in the record. *Lamb I*, at 10. We found that Lamb had satisfied the "knowingly" requirement when it inserted clauses in its subcontracts providing for it to retain funds in violation of the FAR and PPA, which require that subcontractors be paid within seven days. In *Lamb I*, we found that Lamb acted knowingly, or in deliberate ignorance with reckless disregard, when it certified Progress Billing Nos. 2-4 despite having failed to pay all its suppliers and subcontractors. *Lamb I* at 11. The uncontested fact that Lamb certified Progress Billing No. 5, despite still having failed to pay all its suppliers and subcontractors, leads this court to conclude that Lamb also acted knowingly, or in deliberate ignorance with reckless disregard of falsehoods, when it certified this final progress billing. We find that the certification provided with Progress Billing No. 5 was also, on its face, false. It therefore will be treated as a separate violation of the FCA.

B. Civil Penalties

The FCA has been held to attach liability not to the underlying fraudulent activity or to the government's wrongful payment, but to the "claim for payment." *United States v. Rivera*, 55 F.3d 703, 709 (1st Cir. 1995). Indeed, a contractor who submits a false claim for payment may still be liable under the FCA for statutory penalties, even if it did not actually induce the government to pay out funds or to suffer any loss. *See Rivera*, 55 F.3d at 709; *see also Rex Trailer Co. Inc. v. United States*, 350 U.S. 148, 153 n.5 (1956). Therefore, in order for the government to recover civil penalties under the FCA, it is not required to establish that the four false claims submitted by Lamb caused the agency to suffer actual damages. *UMC Elec. Co.*, 43 Fed. Cl. at 793 (holding government is entitled to recover civil penalties even in the absence of actual damages), *aff'd*, 249 F.3d 1337 (Fed. Cir. 2001); *Commercial Contractors, Inc. v. United States*, 154 F.3d 1357 (Fed. Cir. 1998) (affirming finding of civil penalty, but reversing treble damages); *see also United States v. Dyncorp, Inc.*, 136 F.3d 676, 681 (10th Cir. 1998). Consequently, the government need not prove actual damages in order to recover statutory penalties. *UMC Elec. Co.*, 43 Fed. Cl. at 793.

The court in *Rivera* found that the "focus on the claim for payment appears to reflect a congressional judgment that fraud by government contractors is best prevented by attacking the activity that presents the risk of wrongful payment, and not by waiting until the public fisc is actually damaged." *Rivera*, 55 F.3d at 709. By attaching liability to the claim or demand for payment, the statute encourages contractors to "turn square corners when they deal with the government."

*Rivera*, 55 F.3d at 709 (quoting *Rock Island, Ark. & La. R.R. Co. v. United States,* 254 U.S. 141, 143 (1920).

Lamb contends, however, that these four incidents should be treated for purposes of any civil penalty as a single violation. Lamb provides no legal basis for this position. Moreover, it is clear that each certification was a separate and independent act. Each certification was separately signed and accompanied an additional progress billing.

Relying on *United States v. Halper*, 490 U.S. 435, 450 (1989), plaintiff also advances the argument that the court should inquire whether the full sanction allowed by the law would be "unreasonable and not remotely related to the actual loss." *Id.* at 450. *Halper*, however, was reversed by *Hudson v. United States*, 522 U.S. 93 (1997). The Court held that *Halper* was unworkable and "ill considered." *Hudson*, 522 U.S. at 102. *Hudson* disavowed *Halper*'s distinction between punitive and nonpunitive penalties and reaffirmed the previous rule of "evaluating the statute on its face" to determine if a sanction is inappropriate as a punishment. *Id.* (citing *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963)).

The plaintiff also relies upon the excessive fines standards articulated in *United States ex rel. Smith v. Gilbert Realty*, 840 F. Supp. 71 (E.D. Mich. 1993). In *Gilbert Realty* the court examined the disparity between minimal actual damages suffered and very substantial statutory minimum civil penalties. *Id.* at 74. The *Gilbert Realty* court found the 1:178 ratio to be excessive. *Id.* The facts in *Gilbert Realty* are easily distinguished, however. In *Gilbert Realty*, the district court determined that actual damages amounted to $1,630.00. There were 58 civil violations, however, and each violation was subject to the statutory minimum civil penalty of $5,000. The $290,000 civil fine was therefore viewed as excessive. *Id.* (relying on *Halper*, 490 US 435; *Austin v. United States*, 590 U.S. 602 (1993); *Browning-Ferris Indus. v. Kelco Disposal, Inc.* 492 U.S. 257 (1989)). In the present case, we are confronted with only four violations during the course of a contract potentially worth approximately $3.4 million. Even more important, *Gilbert Realty* was decided prior to *Hudson* and therefore may not reflect the current state of civil penalties jurisprudence.

Lamb submitted four false claims. It acted either knowingly or with reckless disregard of the truth or falsity of the claims submitted. Lamb is liable for civil penalties of $5,000 per claim.[4/]

*Treble Damages*

The federal government can recover treble damages for a violation of the FCA if it establishes that:

(1) the contractor presented or caused to be presented to an agent of the United States a claim for payment;
(2) the claim was false or fraudulent;
(3) the contractor knew the claim was false or fraudulent;
(4) the United States suffered damages as a result of the false or fraudulent claim.

*Young-Montenay, Inc. v. United States*, 15 F.3d 1040, 1043 (Fed. Cir. 1994) (citing *Miller v. United States*, 550 F.2d 17, 23 (1977)). If these conditions are met, the FCA provides for the government to recover three times the amount of damages which the government actually sustains. 31 U.S.C. § 3729; *see also Commercial Contractors*, 154 F.3d at 1371 (citing *Young-Montenay, Inc.*,15 F.3d at 1043).

The first three elements are established. The question remaining is whether damages are undisputedly established.

WAPA claims to have suffered actual damages when it made payments totaling $86,300.08 to Lamb's subcontractors for invoices submitted with Progress Billings Nos. 3 and 4. The defendant claims that these payments amount to paying twice for the same work. It contends that WAPA first paid Lamb for Progress Payments Nos. 3 and 4, to which Lamb attached the invoices. It paid a second time when it reimbursed the subcontractors directly. Based upon the amount the agency claims to have expended, defendant is requesting treble damages in the amount of $258,900.24. As a preliminary matter the court will examine objections Lamb has raised to the defendant's inclusion of alleged payments to Riter, Cummins, and Conesco in computing the $86,300.08 total.

[4/] Defendant asks that we impose the maximum fine of $10,000 per violation. We decline to do so. The billings underlying the certification were not improper. We find the facts not so egregious as to warrant the maximum.

Defendant asserts that WAPA paid Riter for invoice No. 12000-149 in the amount of $8725.00. Lary Martin's affidavit is the basis for this claim.[5/] Lamb does not dispute that this invoice was attached to Progress Billing No. 4, nor does it dispute that it did not pay Riter for invoice No.12000-149. Unlike the other subcontractors' payments WAPA made, however, there is no documentary evidence that WAPA actually paid Riter. There is no cancelled check payable to Riter, and no credit card statement. Lamb will not stipulate to this payment and we find that defendant has not established the absence of a genuine issue of fact as to whether WAPA paid Riter.

With respect to Cummins, Lamb correctly points out the discrepancy in invoice numbers between the document from Cummins that Lamb submitted with Progress Payment No. 4 and the invoice number on the document WAPA referenced while making payment to Cummins. Lamb submitted invoice No. 3333 dated March 17, 2000, with Progress Payment No. 4. WAPA paid Cummins with respect to invoice No. 600-47068 dated March 31, 2000. Both invoices, however, reference purchase order No. 524-31373, and both invoices are for $56,386.00. The court finds that the only possibility this raises is of a duplicate invoice. That does not raise a genuine issue of fact as to whether WAPA paid purchase order No. 524-31373, however.

As to Conesco, Lamb contends that if the defendant paid Conesco $119.11 for invoice No. 024436, it did so unnecessarily because Lamb had already paid the bill. Lamb points to the writing on the face of the invoice, "Paid By Lamb." Defendant counters that Lamb has no proof of payment in the form of a receipt or a cancelled check. We cannot weigh evidence or make credibility determinations in evaluating a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Rather, "[t]he evidence of the nonmovant is to be believed and all reasonable inferences are to be drawn in his favor." *Id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)). The notation on the face of this invoice raises a factual issue that can not be resolved on a motion for summary judgment.

Finally, Lamb also alleges that Conesco invoice No. 001466 for $777.21, although paid by WAPA, was not properly payable under the terms of the contract. Lamb does not deny that it submitted the invoice to WAPA, but states that it did

---

[5/] Riter is listed among several subcontractors WAPA paid. Unlike the others, however, this assertion is otherwise unsupported.

so erroneously because concrete forms were not incorporated into the contract. We have already found that Lamb submitted this invoice as part of a certified progress payment. Lamb has not attempted to support its assertion that this invoice was not payable under the contract. We note, in any event, that Part 1 of the certification states, "[t]he amounts requested are only for performance in accordance with the specifications, terms, and conditions of the contract." WAPA was entitled to rely on this statement. Plaintiff's general denial does not raise an issue of fact as to the government's payment.

The other payments that WAPA made are not in dispute. Accordingly, we find that WAPA made a total of $77,575.08 in payments to subcontractors for invoices that Lamb certified it would pay when it submitted Progress Payments Nos. 3 and 4.

Lamb makes two final arguments. First, it claims that it was improper or unnecessary for the agency to pay the subcontractors because they were protected by a performance and payment bond. Lamb maintains that the government should have required them to collect from the surety on the bond. As the defendant correctly points out, however, the government has the right to use retained funds to pay subcontractors. *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 141 (1962). WAPA was not required to refer all the subcontractors to the surety for payment.

Lamb's second argument is more problematic, however. It contends that the money WAPA spent came out of funds WAPA had retained from payments to Lamb. Lamb alleges, and the defendant admits, that at the time of contract termination, WAPA retained 10% of the funds earned under Progress Payments Nos. 2-4, a total $177,214.63. Plaintiff alleges that subcontractors were paid from this retainage, and therefore, WAPA suffered no actual damages.

Defendant has not addressed the relevance, if any, of the source of the funds paid out to satisfy subcontractors and suppliers. Nor has it attempted to account for its use of the $177,214.63 retainage. Although it submitted a demand letter from the contracting officer to Lamb claiming that Lamb owed $1,698,414.91 on the contract, this document has no evidentiary weight.

"[W]hen a job is incomplete, the government must expend funds to get the work done, and is entitled to claim damages only in the amount of the excess which it pays for the job over what it would have paid had the contractor not defaulted." *United States v. Mains Trust Co.*, 332 U.S. 234, 243 (1947). The

present state of the record does not allow us to conclude that the defendant suffered actual damages. Summary judgment on the request for treble damages is therefore denied.

CONCLUSION

Defendant's motion for summary judgment is granted in part and denied in part. Summary judgment is granted for defendant on the issue of Lamb's violations of the FCA. Lamb submitted four false claims to the government. It is thus liable for civil penalties of $5,000 per claim. Summary judgment is denied without prejudice on defendant's request for an award of treble damages of $258,900.24. This matter having been the subject of three motions for summary judgment, defendant shall notify this court no later than October 17, 2003, if it wishes to proceed on the remaining issue of treble damages, in which case trial will be scheduled, or whether final judgment may be entered in the amount of $20,000.

s/Eric G. Bruggink
ERIC G. BRUGGINK
Judge